IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SARA C. DAY,

          **Plaintiff,**

v.                                            CIV. No. 97-260 JP/RLP

STANDARD INSURANCE COMPANY,

          **Defendant.**

**MEMORANDUM OPINION AND ORDER**

The subject of this Order is Defendant's Motion for Summary Judgment [Doc. No. 15], filed October 20, 1997. The parties have agreed that this motion will decided the merits of the case and that there is no need for a trial. After a careful review of the briefs and the records attached as exhibits, I conclude that the motion should be granted.

**Background**

Plaintiff Sara Day was employed as a cashier at First Sierra National Bank ("Bank") and was covered by the defendant's, Standard Insurance Company's ("Standard'), long-term disability plan, group policy number 602539 ("Plan"). Defendant's Statement of Undisputed Material Facts at ¶¶ 1, 4. From November 27, 1989 to December 5, 1989 the plaintiff was hospitalized for severe dizziness, headaches, and hearing loss. Schedule 1 to Defendant's Exhibit B, ST 0059.[1] The plaintiff stopped working in April of 1990 and began receiving long-term disability benefits

---

[1] All citations to Schedule 1 of Defendant's Exhibits A and B will be cited as "ST" followed by a page number.

on June 19, 1990.  ST 0058, ST 0073.  The plaintiff continued to receive disability benefits, but in May of 1993 and again in December of 1994, the defendant informed the plaintiff that it was undertaking a review of her case to determine if she continued to meet the eligibility criteria under the Plan.  ST 0102, ST 0135.  Beginning in November of 1990 and continuing until July of 1996 (or later), the plaintiff was treated by Dr. Vittal Pai for her hearing loss and to determine the extent of her disability.  See ST 0059; ST 0287.  Dr. Pai regularly sent reports on the plaintiff's condition to the defendant.  ST 0079; ST 0087; ST 0093; ST 0103; ST 0127.  On April 29, 1996 Standard informed the plaintiff that her claim was closed because she no longer met the criteria for one who is "disabled" under the terms of the policy. ST 0250-0254.

On May 7, 1996 plaintiff informed the defendant that she intended to oppose the closing of her claim.  ST 0255.  That same month the plaintiff was examined by Drs. Augustin Morales and Ronald Blumenfeld, and the medical records from those examinations were sent to the defendant for review.  ST 0257, ST 0280.  On October 8, 1996 Standard informed plaintiff that it had reviewed the new medical records, that additional vocational investigation was necessary before a final decision could be made on her claim, and that it was reopening her claim while the investigation was ongoing.  ST 0301.  By letter dated December 16, 1996 Standard informed plaintiff that the review of her file was complete and that the decision to close her file had been confirmed.  ST 0313- ST0316.  That same letter reported to the plaintiff that her file would be submitted to the defendant's Quality Assurance Unit for independent review.  Id.  In January of 1997 the Quality Assurance Unit conducted an independent review of plaintiff's claim and concluded that there was inadequate medical evidence that plaintiff was disabled.  The defendant's letter to the plaintiff explained that despite the plaintiff's hearing loss, there was insufficient

evidence to support that Ms. Day suffered from a condition that would preclude her from performing a sedentary or light occupation that does not requires acute hearing skills.  ST 0324.  The defendant then concluded that plaintiff's claim should be closed.  ST 0322-0325.

Plaintiff filed this action in state court on January 28, 1997, seeking recovery of disability benefits.  The case was removed to this Court on February 27, 1997.

## Standard of Review

The long-term disability insurance plan in this case is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  Under ERISA, where an administrator or fiduciary of a plan has discretion to determine a claimant's eligibility for benefits, the district court reviews the plan administrator's decision to terminate plan benefits to determine whether the decision was arbitrary and capricious.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57 (1989); Chambers v. Family Health Plan Corp., 100 F.3d 818, 825 (10th Cir. 1996).

The Plan at issue in this case provides:

No LTD BENEFITS will be paid until STANDARD receives satisfactory written proof:
1. That you became DISABLED while insured under the GROUP POLICY.
2. That you were DISABLED throughout the ELIMINATION PERIOD and the period for which LTD BENEFITS are claimed.
3. That your DISABILITY results from a cause not excluded in Part 7.
4. That you are being seen regularly and treated by a PHYSICIAN.
5. Of such additional information as STANDARD may reasonably require in connection with your claim for LTD BENEFITS.

If your claim is approved, no LTD BENEFITS will be continued beyond the end

3

>of the period for which you have provided STANDARD with satisfactory written proof of loss.

ST 0026-0027.  This provision of the Plan gives wide discretion to Standard to determine when a claimant has submitted enough written proof of a disability to warrant the receipt of Plan benefits.  See Bali v. Blue Cross and Blue Shield Ass'n., 873 F.2d 1043, 1047 (7th Cir. 1989) (stating that a disability plan's grant of discretionary authority to plan administrator was "apparent" where whether claimant was "disabled" was "determined on the basis of medical evidence satisfactory to the Committee."); Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 983-84 (6th Cir. 1991) (finding discretionary authority embodied in a policy requirement of "evidence satisfactory to the Insurance Company.").  This language, taken with the Plan as a whole, does in fact demonstrate that the defendant has discretion to determine a claimant's eligibility for benefits.  Therefore, the defendant's decision to terminate plaintiff's claim must be upheld unless the decision was arbitrary and capricious.

In order to make such a determination, I "may consider only the arguments and evidence before the administrator at the time it made that decision [to terminate benefits]."  Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 380 (10th Cir. 1992).  A decision by a plan administrator to terminate benefits is arbitrary and capricious if there is a lack of substantial evidence to support the administrator's conclusion that a claimant was no longer disabled.  Sandoval, 967 F.2d at 382.  The Tenth Circuit has stated that "substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker.  Substantial evidence requires more than a scintilla but less than a preponderance."  Flint v. Sullivan, 951 F.2d 264, 266 (10th Cir. 1991).

An additional issue raised by the plaintiff is a possible conflict of interest by the defendant. Plaintiff argues that "the fact that the Defendant is acting as the fiduciary brings to relevance the issue of a conflict of interest." Response at 8. However, plaintiff does not explain what conflict she believes exists or how such a conflict may have affected the defendant's decision to close her claim. Plaintiff may mean to imply that the defendant's status as both claims administrator and insurance company created a conflict of interest for the defendant, providing an incentive for it to terminate her claim prematurely. Indeed, there is a potential conflict of interest where a plan covered by ERISA is administered by the insurer. See Semtner v. Group Health Service of Oklahoma, Inc., 129 F.3d 1390, 1392 (10th Cir. 1997).

Since Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the federal circuits have differed on how much deference to give a decision to close a claim when the discretion given by plan language is considered against the backdrop of such a conflict of interest. Compare Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996) (court will decrease the deference in proportion to the seriousness of the conflict) with Atwood v. Newmont Gold Co., Inc., 45 F.3d 1317, 1323 (9th Cir. 1995) (decision by conflicted administrator is presumptively void). The Tenth Circuit has adopted the sliding scale approach which treats the conflict as merely a factor to be considered in determining how the arbitrary and capricious standard should be applied. Chambers v. Family Health Plan Corp., 100 F.3d 818, 827 (10th Cir. 1996). I must therefore take that potential conflict into account in weighing the evidence before me and give the defendant's decision to terminate the plaintiff's benefits less deference than I would in the absence of such a conflict.

## Analysis

ERISA provides that a plan must contain certain procedural steps for the administrator to follow when denying or terminating benefits to a plan participant, including the grant of a "full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. Receiving a full and fair review requires "'knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.'" Sage v. Automation, Inc. Pension Plan and Trust, 845 F.2d 885, 893-94 (10th Cir. 1988) (quoting Grossmuller v. International Union, United Auto. Aerospace & Agric. Implement Workers of America, Local 813, 715 F.2d 853, 858 n.5 (3d Cir. 1983)).

The plaintiff does not allege that she failed to receive a full and fair review from the defendant during the process of reviewing her claim. However, I note that the defendant did meet the standard set forth in Sage for giving a full and fair review. The defendant informed the plaintiff of the status of her claim and encouraged her to submit additional written information that might be relevant to her eligibility for benefits. It appears that the plaintiff was represented by counsel through much of the review process. ST 0108; ST 0216A; ST 0255. In addition, the defendant's Quality Assurance Unit performed an independent review of the termination of the plaintiff's benefits, at which time the plaintiff again had an opportunity to challenge any of the records in her file and to submit additional information. Thus, the defendant did carry out its duty to fully and fairly review its determination that the plaintiff was no longer eligible for benefits.

The plaintiff does contend that the defendant's decision to terminate her benefits under the

Plan was arbitrary and capricious.  Specifically, the plaintiff alleges that her disability was not limited to the hearing loss she experienced initially in late 1989, but also included vomiting, nausea, dizziness, and other health problems.  Plaintiff also contends that these health problems were brought to the defendant's attention and that the defendant ignored them, focusing solely on her hearing loss.  She argues that the defendant's decision to terminate her disability benefits in the face of these other illnesses was arbitrary and capricious.

The Plan provides that an insured, such as the plaintiff, who has been receiving benefits for more than twenty four months must be disabled from all occupations in order to qualify for benefits.  ST 0011.  The policy goes on to state that:

> You are DISABLED from all occupations if , as a result of SICKNESS, ACCIDENTAL BODILY INJURY or PREGNANCY, you are EITHER:
> a.	Unable to perform with reasonable continuity the material duties of any gainful occupation for which you are reasonably fitted by education, training, and experience; OR
> b.	Unable to earn more than 80% of your INDEXED PREDISABILITY EARNINGS while working in your own or any other occupation.

Id.  In order to conclude that the defendant's decision was arbitrary and capricious, I must find that there is no substantial evidence in the record supporting a determination that the plaintiff does not qualify as disabled under this framework.

There is a great deal of evidence in the record, to which plaintiff points, showing that she suffered from severe dizziness and nausea when she was hospitalized initially in late 1989.  ST 0139-0146.  While these particular records clearly illustrate plaintiff's health problems in 1989, they are of little help in determining whether she continued to be disabled at the time her benefits were terminated in December of 1996.  Subsequent medical records affirm the defendant's conclusion that the plaintiff's primary disability was her hearing loss.  For example, Dr. Pai's

7

"Attending Physician's Statement" regarding the plaintiff, dated May 14, 1992, states "[b]ecause of the patient's severe hearing loss, working is limited." ST 0093. The report makes no mention of any other health problems the plaintiff might have. Additional reports regarding the plaintiff filed by Dr. Pai over the next two years also fail to mention any other health problems. ST 0103; ST 0127. In May of 1995 Don Earwood, a vocational coordinator, met with the plaintiff. In his report, dated May 11, 1995, Mr. Earwood states that while the plaintiff continues to suffer from hearing loss, "[Ms. Day] reports no other medical ailments or physical conditions from the past that may be affecting her current status." ST 0181. In his independent review of plaintiff's file, Dr. Sterling Hodgson stated that the plaintiff had suffered from vertigo, nausea, and vomiting during the onset of her hearing loss in 1989, and that "[t]he medical records suggest that the dizziness, nausea and vomiting have ultimately resolved." ST 0206. Dr. Hodgson further notes that "[t]he enclosed medical records suggest that Ms. Day has little trouble with the activities of daily living." ST 0208. A short time later, on June 3, 1996, Dr. Ronald Blumenfeld reported to Dr. Pai that the plaintiff suffered from "intermittent vertigo, occasionally on getting up at night." ST 280. The remainder of Dr. Blumenfeld's letter focuses on plaintiff's hearing loss. ST 0280. Dr. George Spady examined all of plaintiff's medical records as of June 25, 1996 and concluded "I do not see any other physical conditions that would preclude her from performing an occupation that would require no acute hearing." ST 0286. Dr. Spady reaffirmed this statement in October of 1996 after reviewing additional medical records submitted by the plaintiff. ST 0300. Thus, there appears to be substantial evidence in the record to support the defendant's determination that the plaintiff had no health problems beyond hearing loss which would render her "disabled" as that term is defined in the Plan.

Plaintiff relies heavily on the fact that a May 16, 1996 letter from Dr. Augustin Morales states that Ms. Day's diagnoses include chronic fatigue, chronic allergic rhinitis (inflammation of the nasal mucous membrane), urinary tract infection, onychomycosis (fungal disease of the nails), left ear deafness, abdominal hernia, and back pain.  ST 0257.  While Dr. Morales ultimately concludes that her hearing impairment will be a major set back in the plaintiff's employment and that she is not employable due to the various diagnoses he lists, he also notes that "[s]he is currently a busy homemaker, mother (3 children) and wife, on top of her many activities."  Id.  Thus, Dr. Morales' observations as to the plaintiff's ability to work are somewhat controverted by his observations of her busy and active life.

There is also substantial evidence in the record to support the defendant's conclusion that the plaintiff's hearing loss did not render her disabled.  By letter on November 17, 1995, Dr. Pai reported to plaintiff's counsel that "[i]n the better ear (right ear), [plaintiff's] puretone average hearing threshold for air conduction is less than 90 dB it is 62 dB and the speech discrimination scores for the better ear are greater than 40%, they are 84%."  ST 0216A.  On January 26, 1996 Dr. Sterling Hodgson reviewed plaintiff's medical records and reported that "if [plaintiff] does have a 62 dB average hearing loss with 84% speech discrimination, than [sic] Ms. Day ought to be able to hear reasonably well with hearing aids, at least in her better ear."  ST 0220.  Dr. Hodgson also stated that "[h]earing loss should not affect Mr. Day's ability to perform any type of regular, sedentary or light duty work, other than that requiring acute hearing."  ST 0221.  Dr. Hodgson further reported that plaintiff's hearing loss would not affect her ability to perform full-time non-hearing related activities, such as intellectual functioning, reasoning, or reading, nor would it affect her physical capabilities in terms of coordination, handling, carrying objects,

9

traveling, and speaking. ST 0206-08. The medical records and Dr. Hodgson's findings led Karl Smith, a vocational consultant, to conclude in February of 1996 that:

> "There are a variety of positions in which Ms. Day could be re-employed where public contact would not be a critical part of her work. These jobs all require skills which she has gained with her work history with her bank. They are all Sedentary. Examples are . . . Accounting Clerk . . . General Ledger Bookkeeper .. . Billing Clerk . . ."

ST 0238.

During the later part of 1996 the defendant continued to evaluate the issue of whether plaintiff's hearing loss rendered her disabled. The plaintiff performed additional vocational investigation, ST 301, and in November of 1996 an independent vocational counselor determined that the alternative occupations that the plaintiff had previously been determined as capable of performing did exist in and around her home in Truth or Consequences, New Mexico. ST 0310.

There is ample evidence in the record to support the defendant's determination that plaintiff is no longer eligible under the Plan for long term disability benefits. I have considered the defendant's possible conflict of interest as both administrator and insurer and have given its decision less deference according to the Tenth Circuit's mandate in <u>Chambers v. Family Health Plan Corp.</u>, 100 F.3d 818, 827 (10th Cir. 1996). I now find that, despite the conflict, there is sufficient evidence in the record to support a conclusion that the defendant's decision to close the plaintiff's claim was not arbitrary and capricious.

Therefore, it is ORDERED that the defendant's Motion for Summary Judgment [Doc. No. 15] is GRANTED.

_____
UNITED STATES DISTRICT JUDGE